IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LEE GRIFFIN,<br><br>Defendant. | **ORDER and MEMORANDUM DECISION**<br><br><br>Case No. 2:08-cr-480 CW |

Defendant Michael Lee Griffin has been charged with unlawful possession of a firearm. He moves to suppress evidence and statements obtained by the government on June 9, 2009 through a confession in a public parking lot before being read his *Miranda* rights, a search of his home, and confession he made after being read a *Miranda* warning.

Mr. Griffin asserts that the government violated his Fifth Amendment right to remain silent and his Fourth Amendment right to be free of unreasonable searches. Specifically, he contends that (1) the police obtained his confession in the parking lot in violation of *Miranda*,; (2) the police searched his house without his consent, and; (3) the confession he gave after he was read his *Miranda* rights was tainted by the police's earlier violations.

Because the court finds for the reasons below that Mr. Griffin voluntarily confessed, voluntarily consented to the search of his home, and waived his *Miranda* rights after being read them, the court DENIES his motion to suppress.

## BACKGROUND

On June 4, 2009, West Valley City Police received information that Mr. Griffin was in possession of stolen firearms. Mr. Griffin was known by the police to be a convicted felon.

Police began to watch Mr. Griffin's home. At about 8:35 p.m., police saw Mr. Griffin leave his residence in a car. Mr. Giffin was seated in the front seat as his step father, Dale Baumgaerelt, drove. Mr. Griffin's girlfriend was seated in the rear passenger-side of the car.

Two unmarked police cars, one driven by Detective John Lefavor, followed Mr. Baumgaerelt's car. Mr. Baumgaerelt then turned into the parking lot of a grocery store and pulled into a parking stall. Both unmarked police cars parked behind Mr. Baumgaerelt's car, impeding it from leaving. Detective Lefavor turned on his vehicle's emergency lights, but did not activate the siren.

Detective Lefavor was dressed in plain clothes, but was wearing a police-badge necklace, a holstered firearm, and a pair of handcuffs. The other officer who initially pulled his car into the parking lot was dressed similarly. Detective Lefavor got out of his car and walked up to the side of the car where Mr. Griffin was sitting. Detective Lefavor asked Mr. Griffin to step out of the vehicle. Detective Lefavor and Mr. Giffin then walked to the rear of Mr. Baumgaerelt's car to speak. Other law enforcement officers soon arrived to the parking lot but did not participate in the conversation. There were also members of the public in the parking lot at the time.

Detective Lefavor began the conversation by telling Mr. Griffin that police had information that Mr. Griffin had firearms and that police wanted to recover the guns. In response, Mr. Griffin stated that he had the guns and that he was willing to go to his house and give the guns to police. Detective Lefavor explained to Mr. Griffin that per police department policy he was going to place Mr. Griffin in handcuffs in order to transport him. Mr. Griffin was handcuffed and placed in the front seat of Detective Lefavor's unmarked police car.

It was a short drive between the parking lot and Mr. Griffin's home, so the drive took only a few minutes. On the way to Mr. Griffin's residence, Mr. Griffin told Detective Lefavor

that he was concerned about his mother finding out about the guns.  Mr. Griffin asked Detective Lefavor if he could retrieve the guns from the home and bring them out to police.  Detective Lefavor conveyed Mr. Griffin's request to the police sergeant, but the police sergeant instructed Detective Lefavor to deny the request.

When Detective Lefavor and Mr. Griffin arrived at Mr. Griffin's home, there were a number of police officers already there.  Detective Lefavor followed Mr. Griffin through an open door into the home.  Once inside, Mr. Griffin indicated that the guns were underneath a blanket behind the couch.  Police looked behind the couch and found three rifles.

Detective Lefavor then drove Mr. Griffin to the police station to interview him.  Detective Lefavor began the interview by obtaining Mr. Griffin's personal information.  Detective Lefavor then read Mr. Griffin his rights from a written *Miranda* card.  Mr. Griffin stated that he understood his rights and that he was willing to answer questions.  Mr. Griffin made incriminating statements during the interview.  Mr. Griffin remained cooperative throughout the investigation.

## ANALYSIS

Mr. Griffin moves to suppress all evidence against him related to his admission in the parking lot, the search of his house, and his confession at the interview.  He raises three grounds.  First, he asserts that his admission in the parking lot was obtained in violation of his Fifth Amendment rights as described in *Miranda v. Arizona*, 384 U.S. 435 (1966).  He contends that he was in custody at the time he made the initial incriminating statement and that the statement was the result of an interrogation.  Second, Mr. Griffin maintains that the search and seizure of the firearms was unlawful because his consent was not voluntary.  Finally, he argues that his post-*Miranda* confession is inadmissible because it was tainted by the earlier violations.

I.   **Pre-*Miranda* Confession**

Statements made during custodial interrogation are not admissible at trial against a defendant unless the defendant was notified of his *Miranda* rights. *See Miranda*, 384 U.S. at 444. The *Miranda* decision applies to "statements obtained from an individual who is subjected to custodial police interrogation." *Id.* at 439. Accordingly, there are two questions the court must answer to determine whether a *Miranda* warning was necessary: was Mr. Griffin in custody, and did Detective Lefavor's statements meet the legal definition of an interrogation? *See United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007). If the answer is yes to these questions, then a defendant's statements in the absence of the warning are not admissible. *See id.*

On the first question, the court finds that Mr. Griffin was in custody at the time of his initial confession. To determine whether a suspect was in custody, courts consider whether "a reasonable [person] in the suspect's position would have understood his situation . . . as the functional equivalent of formal arrest." *U.S. v. Erving L.*, 147 F.3d 1240 (10th Cir. 1998). It is a "fact intensive" inquiry, taking into account the "totality of the circumstances." *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993). Several factors are considered when making this determination, including "the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will," the "nature of the questioning," whether "prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave," and "whether police dominate the encounter." *United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008) (quoting *Griffin*, 7 F.3d at 1518).

Here, considering the totality of the circumstances, Mr. Griffin was in custody at the time he made his initial confession. First, two police cars blocked in the car in which Mr. Griffin was driving, indicating that the car was not free to leave. Next, Detective Lefavor directed Mr.

Griffin to step out of the car, with another officer in sight. Finally, Mr. Griffin and Detective Lefavor walked to the back of the car, and other officers began to arrive. A reasonable person in Mr. Griffin's position would have understood himself to be in custody at that point.

The question then becomes whether Detective Lefavor interrogated Mr. Griffin. First, Detective Lefavor's statements are not an interrogation merely because they were made while Mr. Griffin was in custody. *See Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). For *Miranda* purposes, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. To decide whether Detective Lefavor's statement was the functional equivalent of an interrogation, the court makes an objective assessment of whether a reasonable person in Mr. Griffin's position would perceive the officer's statements and actions as interrogation. *See United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004).

Here, Mr. Griffin asserts that Detective Lefavor's statements that police had been informed that Mr. Griffin was in possession of firearms and that police wanted to get them was the equivalent of an interrogation. Mr. Griffin contends that Detective Lefavor carefully chose his words and intended Mr. Griffin to respond in an incriminating way. As noted by the court in *Rambo*, "one of the techniques used by police during interrogation is to 'posit the guilt of the subject.'" *Rambo*, 365 F.3d at 909 (quoting *Innis*, 446 U.S. at 299).

The government responds that Detective Lefavor was merely informing Mr. Griffin of the reason for the encounter and that police had evidence against him, and that such statements are not an interrogation. In support, the government cites a string of cases, including *U.S. v. McGlothen*, 556 F.3d 698, 701 -702 (8th Cir. 2009); *United States v. Moreno-Flores*, 33 F.3d

1164, 1169 (9th Cir. 1994); *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995); *U.S. v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992); *United States v. Lockett*, 393 F.3d 834, 838 (8th Cir. 2005); *United States v. Suarez*, 162 Fed. Appx. 897, 902 (11th Cir. 2006); and *United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000).

The court has reviewed cases finding that interrogations had and had not occurred, and considered all of the circumstances. For the reasons discussed below, after this analysis, the court agrees with the government that Detective Lefavor's statements to Mr. Griffin before Mr. Griffin confessed were not an interrogation for *Miranda* purposes.

First, as stated by the Seventh Circuit in *Enoch*, "[b]riefly reciting to a suspect in custody the basis for holding him, without more, cannot be the functional equivalent of an interrogation." *Enoch*, 70 F.3d at 1500. *See also United States v. Eastom*, 320 Fed. Appx. 879, 885 (10th Cir. 2009) (a "police explanation of why they were in [a suspect's] home" was "alone insufficient to constitute interrogation."). In context, it is clear that Detective Lefavor's statements are reasonably understood as telling Mr. Griffin the reason for the police's actions in taking him into custody. A reasonable officer would know that most people would expect an explanation of why two unmarked police cars boxed in his or her car and told him or her to step out. Further, while it is not necessary for an officer to ask questions to meet the definition of an interrogation, *see Rambo*, 365 F.3d at 909, it is nonetheless important to note that Detective Lefavor made the statements as declarations, not as questions. This form of speaking lessens the impression that a reasonable officer would expect an inculpatory response. Moreover, Mr. Griffin concedes that he confessed immediately after Detective Lefavor made his statements. In sum, there is no evidence that Detective Lefavor, or a reasonable officer in his place, should have anticipated that Mr. Griffin would immediately confess in response to those statements.

The circumstances of the present case are quite unlike the interaction that the Tenth Circuit found was an interrogation in *Rambo*. In that case, a police officer was talking to a suspect who was in custody in an "interrogation room." *Rambo*, 365 F.3d at 907. The officer opened a conversation by implying that the defendant was guilty and by informing him that he was going to charge a suspected accomplice. *See id.* at 908. The officer further appeared to play on the suspect's concerns about his suspected accomplice's children. *See id.* Finally, the officer directed the suspect several times to the matter under investigation.. *See id.* Considering these key circumstances along with the overall context, the Tenth Circuit held that the officer had interrogated the suspect. *See id.* at 909-10.

The court is cognizant that an interaction need not reach the level of that described in *Rambo* to be an interrogation, and that each case must be judged on its own facts. But after considering the full context and circumstances here, the court is satisfied that this case falls in the realm of cases such as *Enoch* and *Eastom* that conclude that there was no interrogation and is distinguishable from cases such as *Rambo* that reach the opposite conclusion.

Accordingly, the court finds that Mr. Griffin made his confession voluntarily, and without interrogation by the police. Such statements are not are admissible even if no *Miranda* warning is given. *See United States v. Torres-Guevara*, 147 F.3d 1261, 1266 (10th Cir. 1998) ("Because the statement was volunteered, rather than given in response to any interrogation, this statement also was admissible in the absence of *Miranda* warnings.") (citation omitted). This conclusion is true even if the person is in custody when he or she made the statement. *See United States v. Glover*, 211 Fed. Appx. 811, 814 (10th Cir. 2007) (*Miranda* does not bar admission of voluntary statements, even if made in custody).

## II. Evidence from the Search

Voluntary consent is an exception to the Fourth Amendment's search warrant requirement. *See United States v. Silva-Arzeta*, - - - F.3d - - -, 2010 WL 1662480, *3 (10th Cir. April 27, 2010). If a person voluntarily consents to a search, he or she waives of his or her Fourth Amendment rights in the item or place. *See id.* Whether a defendant voluntarily consented to a search is a question of fact, determined by the totality of the circumstances. *See id.* "Valid consent is that which is freely and voluntarily given." *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir.1999) (citation omitted). There is no presumption that the consent was voluntary, or that it was involuntary. *United States v. Hernandez*, 93 F.3d 1493, 1500 (10th Cir. 1996). The government has the burden of proving the consent was voluntary. *See id.*

"The central question is whether a reasonable person would believe he was free to ... disregard the officer's request." *Silva-Arzeta*, 2010 WL 1662480, *4 (quoting *United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006)). "The proper inquiry centers on whether the defendant suffered, inter alia, physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery." *Silva-Arzeta*, 2010 WL 1662480, *4 (quoting *United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999)

Courts also look to factors such as 1) the youth, lack of education, or low intelligence of the defendant; 2) the lack of any advice as to the defendant's constitutional rights; 3) the length of detention; 4) the repeated and prolonged nature of the questioning; 5) degree to which the individual cooperates with police; and 6) the use of physical punishment such as the deprivation of food or sleep. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

In this case, Mr. Griffin offered to go to his house and turn the firearms over to police without having Detective Lefavor even asking him to do so. The interaction between Mr. Griffin

and Detective Lefavor before Mr. Griffin consented was short – almost immediately after Detective Lefavor informed him of the reason for the stop. *See, e.g., United States v. Figueroa-Espana*, 511 F.3d 696, 705 (7th Cir. 2007) (consent voluntary because defendant immediately consented after single question from law enforcement officer). Detective Lefavor did not subject Mr. Griffin to repeated or prolonged questioning or use any other coercive techniques before Mr. Griffin consented. Moreover, Mr. Griffin was cooperative with police from the initial encounter until the search was completed, and the court has no indication from the record that he is incapable of intelligently giving consent and cooperation. While it is true that there were two officers in the parking lot initially and that more arrived as the situation unfolded, Mr. Griffin gives no authority for the proposition that the mere presence of more than one officers is by itself coercive. Nor does the record reflect that any of those officers threatened, approached, or otherwise interacted with Mr. Griffin in a way that might have intimidated him. Instead, Mr. Griffin spoke to Detective Lefavor alone, who took no actions against Mr. Griffin that could reasonably be construed as coercive.

Accordingly, the court cannot find that police used any coercion in obtaining consent from Mr. Griffin. This outcome holds true even though Detective Lefavor did not tell Mr. Griffin that he could withhold consent and Mr. Griffin was in custody. *See United States v. Thompson*, 524 F.3d 1126, 1134 (10th Cir. 2008) (consent to search voluntary because consent was not coerced despite the fact officers did not inform homeowner of right to refuse) and *U.S. v. Contreras*, 506 F.3d 1031, 1037 (10th Cir. 2007) (ruling that "detention is only one factor to be considered in determining whether consent was voluntarily and freely given based on the totality of the circumstances."). Mr. Griffin's consent to the search of his home was therefore voluntary and evidence obtained during that search is admissible.

Mr. Griffin argues that he attempted to limit the scope of the search of his home by requesting that he be allowed to bring out the firearms himself. *See United States v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996). Under the circumstances, the court cannot find that Mr. Griffin's request to get the firearms himself was a cognizable attempt to limit the scope of the search. Mr. Griffin was essentially asking police to trust him to go alone into a house where his parents and at least one sibling also lived and retrieve firearms that may have been loaded. Such a request is so inconsistent with the safety of the officers and the public that a reasonable person in Mr. Griffin's position could not have believed it would be granted. Moreover, even if this were a *bona fide* attempt by Mr. Griffin to limit the scope of consent, Mr. Griffin made no attempt to withdraw his consent when Detective Lefavor told him that he could not get the firearms himself. Instead, Mr. Griffin led police directly to the firearms very soon after having his request declined. In that scenario, Mr. Griffin voluntarily expanded the scope of consent after limiting it.

### III.     Post-*Miranda* Confession

Mr. Griffin does not deny that he waived his right to remain silent after being read his *Miranda* rights at the station. Instead, the sole basis for Mr. Griffin's argument that his post-*Miranda* confession should be suppressed is that it was tainted by earlier violations of his Fourth and Fifth Amendment rights. As is clear from the above discussion, however, the court has found that no such violations occurred. Accordingly, his statements at the police interview are admissible.

## CONCLUSION

For the reasons set forth above, Mr. Griffin's motion to suppress is DENIED.

SO ORDERED this 17th day of May, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge